## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

STEPHEN COREY BRYANT,       )
                                      )
              Petitioner,      )
                                      )
       vs.                 )
                                      )   No. 9:16-cv-01423-DCN-MHC
BRYAN P. STIRLING, *Commissioner, South* )
*Carolina Department of Corrections*; LYDELL )      **ORDER**
CHESTNUT, *Deputy Warden, Broad River*  )
*Correctional Institution Secure Facility*,    )
                                        )
            Respondents.    )
_____)

      Petitioner Stephen Corey Bryant ("Bryant") is a death row inmate in the custody of the South Carolina Department of Corrections ("SCDC"). He filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 14, 2016. ECF No. 30. This matter is before the court on Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 116, that the court grant respondents Bryan P. Stirling ("Stirling") and Lydell Chestnut's ("Chestnut," and together, "respondents") motion for summary judgment, ECF No. 91. For the reasons set forth below, the court adopts the R&R and grants the motion.

## I.  BACKGROUND

      Bryant pled guilty to three counts of murder, two counts of first-degree burglary, one count of second-degree burglary, two counts of assault and battery with intent to kill, one count of second-degree arson, armed robbery, possession of a stolen handgun, and threatening the life of a public employee. Circuit Court Judge Thomas A. Russo

1

sentenced Bryant to death for the murder of one of the three murder victims, Willard

Tietjen ("Tietjen").

The R&R ably recites the facts of the case, as summarized by the Supreme Court

of South Carolina. R&R at 2 (quoting <u>State v. Bryant</u>, 704 S.E.2d 344, 344–45 (S.C.

2011)). In short, Bryant engaged in an eight-day crime spree that involved multiple

robberies and murders. Bryant started by casing isolated rural homes for vulnerable

victims. He would appear midday at homes, claiming to be looking for someone or

having car trouble. Over the course of eight days, Bryant burglarized several homes and

murdered three individuals, including Tietjen. Bryant went to Tietjen's home, shot him

nine times, and looted his house. Bryant answered several calls made to Tietjen's cell

phone by Tietjen's wife and daughter, telling them that he was the "prowler" and that

Tietjen was dead. He burned Tietjen's face and eyes with a cigarette. Before leaving,

Bryant left two messages on the walls. One said, "victim number four in two weeks,

catch me if you can." On another wall, he wrote the word "catch" and some letters in

blood. While awaiting trial, Bryant threatened a correctional officer and attacked and

seriously injured another.

Bryant was indicted in Richland County in December 2004 and in Sumter County

in July 2006. ECF No. 16-12 at 162–89. Prior to and at his guilty plea, Bryant was

represented by three attorneys (both individually and collectively, "trial counsel"). Jack

D. Howle, Jr. ("Howle") and James Babb ("Babb") handled preliminary matters and trial

preparation until July 18, 2008, when John D. Clark ("Clark") was appointed to replace

Babb. Due to Babb's prior involvement, all three attorneys were present for Bryant's

guilty plea, which Bryant entered on August 18, 2008. ECF No. 16-6 at 60–107. On

2

September 11, 2008, Judge Russo sentenced Bryant to death for the murder of Tietjen, finding the aggravating circumstance of armed robbery.  ECF No. 16-5 at 61–63.

Bryant appealed his case to the Supreme Court of South Carolina.  On January 7, 2011, the Supreme Court of South Carolina affirmed Bryant's convictions and sentences.  ECF No. 16-6 at 178.  Bryant petitioned for rehearing, which the court denied on January 24, 2011.  Id. at 184.  On May 10, 2011, Bryant filed an application for post-conviction relief ("PCR").  Id. at 112.  On May 21, 2011, Bryant filed an amended PCR application.  ECF No. 16-7 at 44.  On October 1, 2012, Bryant filed a second amended PCR application.  Id. at 144.  The PCR court held an evidentiary hearing from October 1–3, 2012, id. at 151, and on December 4, 2012, the PCR court dismissed Bryant's application, ECF No. 16-12 at 84.  Bryant filed a motion to reconsider, which the PCR court denied.  Id. at 146.  Bryant then filed a petition for writ of certiorari with the Supreme Court of South Carolina.  ECF No. 16-34.  On March 4, 2015, the Supreme Court of South Carolina denied Bryant's petition, ECF No. 16-39.  On May 6, 2015, the Supreme Court of South Carolina denied Bryant's petition for rehearing, ECF No. 16-41, and issued a remittitur, ECF No. 16-42.

On June 19, 2015, Bryant commenced this action by filing a motion for stay of execution and a motion to appoint counsel.  ECF No. 1.  Bryant then filed his petition for writ of habeas corpus pursuant to § 2254 on January 14, 2015.  ECF No. 30.  Bryant filed an amended petition on April 28, 2016.  ECF No. 37, Amend. Pet.  Along with his amended petition, Bryant contemporaneously filed a motion to stay his habeas proceeding pending the exhaustion of his state court proceedings.  ECF No. 38.  The court granted the motion to stay on July 26, 2016.  ECF No. 52.

3

On May 3, 2016, Bryant filed two additional PCR applications in state court. ECF Nos. 89-2 at 3, 89-38 at 27.  The PCR court presided over both actions and initially allowed Bryant's PCR action based on <u>Atkins v. Virginia</u> to proceed.  <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002) (holding that executions of intellectually disabled criminals constituted cruel and unusual punishments prohibited by the Eighth Amendment).  The PCR court denied Bryant's other action, based on his PCR counsel's failure to raise claims that should have been discovered, as successive and time-barred.  ECF Nos. 89-6, 89-8.  Bryant moved to alter or amend the court's order, and the PCR court denied that motion on September 16, 2016.  ECF No. 89-9.  Bryant then appealed the denial, ECF No. 89-10, and the Supreme Court of South Carolina dismissed the appeal on February 7, 2017, ECF No. 89-15.

On October 1, 2018, the PCR court conducted an evidentiary hearing on Bryant's <u>Atkins</u>-claim application.  ECF No. 89-37 at 146.  On January 3, 2019, the PCR court denied the application.  <u>Id.</u> through ECF No. 89-38 at 24.  Bryant filed a motion to reconsider, which the PCR court denied on March 5, 2019.  ECF No. 89-38 at 25.  Both Bryant and respondents filed petitions for writ of certiorari, and the Supreme Court of South Carolina denied both petitions on May 11, 2021.  ECF No. 52.  The Supreme Court of South Carolina denied Bryant's subsequent petition for rehearing on May 21, 2021. ECF No. 89-54.  This ended Bryant's state court proceedings, and the court lifted the stay in Bryant's habeas proceeding, effective October 4, 2021.  ECF No. 87.

On October 15, 2021, respondents filed their motion for summary judgment.  ECF No. 91.  Bryant filed his response and traverse on February 7, 2022, ECF No. 104, and respondents replied on April 8, 2022, ECF No. 114.  On April 19, 2022, Magistrate Judge

Cherry issued the R&R, recommending that the court grant respondents' motion for summary judgment. ECF No. 116, R&R. On July 18, 2022, Bryant filed his objections to the R&R. ECF No. 124. Respondents responded to Bryant's objections on August 8, 2022. ECF No. 127. Bryant's claims are now ripe for resolution.

## II.  STANDARD

### A.  R&R Review

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be

dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings.  Id.

### B.  Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### C. Habeas Corpus

#### 1. Standard for Relief

This court's review of a habeas petition is governed by 28 U.S.C. § 2254, which was amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1213. See Lindh v. Murphy, 521 U.S. 320 (1997). Section 2254(a) provides federal habeas jurisdiction for the limited purpose of establishing whether a person is "in custody in violation of the Constitution or laws or treaties of the United States." This power to grant relief is limited by § 2254(d), which provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses contained in § 2254(d)(1) are to be given independent meaning—in other words, a petitioner may be entitled to habeas corpus relief if the state court adjudication was either contrary to or an unreasonable application of clearly established federal law.

A state court decision can be "contrary to" clearly established federal law in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Section 2254(d)(1) restricts the source of clearly established law to holdings of the

Supreme Court as of the time of the relevant state court decision.  See id. at 412; see also Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

With regard to "unreasonable" application of the law, a state court decision can also involve an "unreasonable application" of clearly established federal law in two ways: (1) "if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407.

However, "an unreasonable application of federal law is different from an incorrect application of federal law," and "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 410–11 (emphasis in original). Indeed, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams, 529 U.S. at 410).

### 2.  Procedural Default

A petitioner seeking habeas relief under § 2254 may only do so once the petitioner has exhausted all remedies available in state court.  28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim

to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997),

abrogated on other grounds, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011).

Under the doctrine of procedural default, "a federal court will not review the merits of

claims, including constitutional claims, that a state court declined to hear because the

prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9

(2012); see also Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (explaining that

generally, "[f]ederal habeas review of a state prisoner's claims that are procedurally

defaulted under independent and adequate state procedural rules is barred.").

But "[t]he doctrine barring procedurally defaulted claims from being heard is not

without exceptions." Martinez, 566 U.S. at 10. One such exception occurs when a

prisoner seeking federal review of a defaulted claim can show cause for the default and

prejudice from a violation of federal law. Id. "Inadequate assistance of counsel at initial-

review collateral proceedings may establish cause for a prisoner's procedural default of a

claim of ineffective assistance at trial." Id. at 10. In order to establish such cause, the

following elements must be established:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial"
> claim; (2) the "cause" consisted of there being "no counsel" or only
> "ineffective" counsel during the state collateral review proceeding; (3) the
> state collateral review proceeding was the "initial" review proceeding in
> respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state
> law requires that an "ineffective assistance of trial counsel [claim] . . . be
> raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013) (quoting Martinez, 566 U.S. at 14, 17–18).

A claim is "substantial" if it has "some merit." Martinez, 566 U.S. at 14.

### 3.  Ineffective Assistance of Counsel

A petitioner asserting ineffective assistance of counsel must demonstrate that (1)

his counsel's performance was deficient, and (2) the deficient performance prejudiced the

petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient when "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  In assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential," and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  When considering prejudice in the context of a death penalty case, "the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  Id. at 695.

Because "[s]urmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult," Harrington v. Richter, 562 U.S. 86, 105 (2011).  The Supreme Court has explained that "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential.'"  Id. (quoting Strickland, 466 at 689).  Therefore, a court's review of an ineffective assistance counsel

claim under the § 2254(d)(1) standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

## III.   DISCUSSION

Bryant's amended petition raises nine grounds for relief. Bryant objects to the Magistrate Judge's findings on Grounds Two, Three, Six, Seven, and Eight. Bryant does not object to the Magistrate Judge's findings on Grounds One, Four, Five, and Nine, and in the absence of any objections, the court reviews those findings for clear error. Finding none, the court proceeds to consider each ground that Bryant raised objections to in turn.

### A. Ground Two

In Ground Two, Bryant alleges that his trial counsel was ineffective for failing to provide accurate advice regarding the likely sentence he would receive were he tried by a jury versus if were to plead guilty.

Bryant pled guilty to three counts of murder and other felonies but received no consideration at the time of his guilty plea. At the plea hearing, the prosecution affirmatively stated that no plea negotiations took place. Bryant alleges that despite no plea agreement in place, his trial counsel advised him that there was an "advantage" to pleading guilty to capital murder because it would lessen his chances of receiving a death sentence. Amend. Pet. at 28. Bryant's trial counsel, Babb, allegedly advised Bryant to plead guilty under the belief that doing so would not forfeit Bryant's right to be sentenced by a jury. Bryant further alleges that he pled guilty after trial counsel relayed "empirical and statistical evidence" that indicated he would be more likely to be sentenced to death by a jury. Id. at 32.

In the R&R, the Magistrate Judge further examined the events surrounding the purported advice given by trial counsel.  Bryant does not object to the R&R's rendition of those facts, and the court finds that the R&R's recounting of the facts is supported by the record.

In short, Babb testified at the PCR evidentiary hearing that he attended a conference for defense attorneys where he consulted with several well-known capital defense attorneys.  Two of those attorneys purportedly relayed statistics to Babb reflecting that a defendant's chances of receiving a death sentence were higher if he maintained his innocence.  Babb testified that he began to look into whether Bryant could enter a guilty plea but maintain his right to be sentenced by a jury.  This included raising the issue to the South Carolina Supreme Court via a petition for writ of certiorari.  Soon after, Babb was replaced as counsel.  Howle, who remained on the case, learned that Babb's contemplated strategy was not feasible.  Nevertheless, Howle believed that even apart from the statistics, it would be preferable to avoid having the jury hear the evidence twice and instead, "go with the judge hearing it and [] our mitigation."  ECF No. 16-8 at 61.  Both Babb and Howle testified that they had multiple conversations with Bryant about entering a guilty plea, and Bryant indicated he fully understood the decision.  By the time Clark replaced Babb, the decision had largely been made, and Clark did not question the wisdom of the decision.  Bryant testified at the hearing that he had planned on going to trial "from the beginning," but he decided to plead guilty based on trial counsel's advice.  ECF No. 16-9 at 133.

The PCR court denied Bryant's ineffective trial counsel argument, which asserted failure to provide accurate sentencing advice.  The PCR court focused on the fact that

Bryant testified he knew he would be found guilty and sentenced to either life without the possibility of parole or death "either way." ECF No. 16-12 at 104. The PCR court also noted that the supposed statistics were "but part of the counsel's consideration." Id. Bryant's trial counsel had also noted other strategic considerations, including, for example, that the facts in the case would be very difficult for a jury to hear and that a judge would be a more neutral figure. In the R&R, the Magistrate Judge determined that the PCR court's findings were not unreasonable and did not result in an unreasonable application of federal law.

Bryant's sole objection under this ground is that the Magistrate Judge applied the wrong standard when evaluating Bryant's claim. Bryant argues that the Magistrate Judge applied § 2254(e)'s "clear and convincing error" standard even though Bryant's burden under § 2254(d) is to show that the state court's decision was "unreasonable." ECF No. 124 at 6. Upon review, the court does not find that the Magistrate Judge erred and applied the incorrect standard. The Magistrate Judge specifically noted from the onset of the analysis that "[b]ecause the PCR court ruled on the merits of this claim, the court is focused on whether the PCR court's determination is either based on unreasonable factual findings or resulted in a decision that is contrary to, or involved an unreasonable application of, federal law." R&R at 22. Bryant cherry picks two instances where the Magistrate Judge used the phrase "clear and convincing." ECF No. 124 at 6 (citing R&R at 25, 31). But Bryant ignores that the R&R ultimately applied the proper standard and determined that the PCR court's findings were not unreasonable. See, e.g., R&R at 25 (determining that the PCR court's finding that trial counsel "significantly consulted" with Bryant was not unreasonable), id. at 27 (same, for the PCR court's finding that Bryant's

situation was "somewhat unique" because he had acknowledged that he was unlikely to receive a significantly different sentence under either route).

Beyond the fact that the Magistrate Judge applied the proper standard for its findings, the court finds that the Magistrate Judge did not err in its application of § 2254(e) in the two instances identified by Bryant. Bryant argues that § 2254(e) does not apply because "no new evidence has been presented in this court." ECF No. 124 at 6. Bryant is mistaken about when the rule applies. As the United States Supreme Court explained, § 2254(e)(1) "pertains [] to state-court determinations of factual issues, rather than decisions. Subsection (d)(2) contains the unreasonable requirement and applies to the granting of habeas relief." Miller-El v. Cockrell, 537 U.S. 322, 341–42 (2003); see also Merzbacher v. Shearin, 706 F.3d 356, 364 (4th Cir. 2013) (quoting Miller-El, 537 U.S. at 348) ("The two provisions, operating in tandem, require that '[t]o secure habeas relief, petitioner must demonstrate that a state court's finding . . . was incorrect by clear and convincing evidence, and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court.'"); Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010) ("[W]e conclude that § 2254(d)(2) and § 2254(e)(1) will both ordinarily apply even after a district court has properly held an evidentiary hearing."). Circuits that previously held that the clear and convincing evidence standard only applies when the petitioner presents new evidence for the first time in federal court have since modified their approach to conform with this circuit's approach. See Murray v. Schriro, 745 F.3d 984, 1000 (9th Cir. 2014), overruling Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004) (explaining that "[a]fter [Cullen v. ]Pinholster, a federal habeas

court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)").

In both references to Bryant's lack of clear and convincing evidence, the Magistrate Judge was describing Bryant's failure to overcome the presumption of correctness for the PCR court's <u>factual findings</u>, not the PCR court's decision itself.  <u>See</u> R&R at 25, 31.  By observing that a state court's factual determinations are presumed correct and must be rebutted by clear and convincing evidence, the Magistrate Judge did not err in its application of the rule.

Bryant does not otherwise object to the substance of the Magistrate Judge's conclusions.  In the absence of an objection, the court "must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond</u>, 416 F.3d at 315 (internal quotations and citation omitted).  The court finds that the Magistrate Judge did not clearly err in concluding that the PCR court's decision was not unreasonable.

### B.  Ground Three

In Ground Three, Bryant alleges that the trial court erroneously refused to allow Bryant to present after-discovered witness testimony concerning mitigation and allowed the state to present additional evidence on aggravation of punishment.  Bryant further alleges that trial counsel rendered ineffective assistance by failing to object to the aggravating evidence.

On August 18, 2008, Bryant pled guilty to three counts of murder and other crimes but only faced the death penalty for the murder of Tietjen.  Sentencing began on September 2, 2008, and the trial court opened the sentencing phase by explaining that the

court was there on that day "to proceed with the sentencing phase with matters associated with that indictment," referring to the indictment for which the state was seeking the death penalty. ECF No. 16-1 at 21. Both parties gave their closing arguments on September 9, 2008. When the trial court reconvened on September 11, 2008, the trial court denied defense counsel's motion to reopen the case to hear evidence from an additional mitigation witness who had come forward. The trial court then allowed the solicitor to present testimony from three witnesses who were either victims or related to victims from Bryant's other crimes not involving Tietjen. Bryant's trial counsel did not object and declined to cross-examine the witnesses. The trial court then gave the defense the opportunity to be heard. Bryant's trial counsel told the court that Bryant's family did "not feel they emotionally could come here and talk." ECF No. 16-5 at 58. Trial counsel also told the court that Bryant did not wish to address the court, but a letter Bryant had written to Tietjen's family, which was already in evidence, conveyed what he would say. The trial court subsequently sentenced Bryant on all crimes to which he had pled guilty, including the lesser crimes and the murder of Tietjen.

The PCR court rejected Bryant's claims that his due process rights were violated and that his trial counsel rendered ineffective assistance of counsel. The PCR court explained that South Carolina law requires a sentencing judge review victim impact statements prior to sentencing and allow the defense the opportunity to respond. The PCR court also indicated that, contrary to Bryant's assertion, the trial court did not consider the non-capital victim impact testimony in sentencing Bryant for capital murder.

The R&R reached two findings under its § 2254(e) analysis: first, it was not unreasonable for the PCR court to find that the trial court did not consider the non-capital

16

victim impact testimony in deciding whether to sentence Bryant to death.  Second, the

PCR court's decision was not contrary to clearly established federal law in <u>Payne v.

Tennessee</u>, 501 U.S. 808 (1991), <u>Gardner v. Florida</u>, 430 U.S. 349 (1977), or <u>Strickland</u>.

Bryant objects to both recommendations.

### 1. Non-Capital Victim Impact Testimony

To reiterate, the court reviews the portions of the R&R to which Bryant objects <u>de

novo</u>.  Under that standard, the court finds that the PCR court's finding was not

unreasonable.  Bryant has failed to present any evidence that the trial court considered the

non-capital victim testimony for anything but the sentencing of Bryant's non-capital

offenses.  Rather, the record indicates that the testimony was, in fact, heard and

considered separately.  At the time of Bryant's guilty plea, the parties agreed to defer

"<u>any</u> sentencing proceedings" until September 2, 2011.  ECF No. 16-6 at 51 (emphasis

added).  The trial court heard mitigation and aggravation evidence on the murder charge

subject to the death penalty beginning on September 2, and both sides presented closing

arguments on September 9, 2011.  The fact that the trial court then heard testimony from

the non-capital victims after the court reconvened on September 11 is entirely consistent

with the fact that the trial court separated the charges.  This conclusion is further

supported by the following exchange between the court and the solicitor prior to

presentment of the non-capital victim testimony:

> THE COURT:        At this time, Solicitor, if there's any further
> presentation by the State regarding sentencing if
> there's any individuals who wish to be heard I'll be
> happy to hear from them at this time.
>
> MR. JACKSON:      Your Honor, there are a few individuals that would
> like to speak on <u>their particular cases</u> that he pled
> guilty to.  Is that what you're referring to?

THE COURT:        Yes, sir.

ECF No. 16-5 at 52 (emphasis added).  The solicitor's clarification and the trial court's

response support respondents' contention that the trial court compartmentalized the

evidence.  Even if the trial court's procedural record was not a model of clarity, Bryant

ultimately shoulders the burden of proving that the trial court erred.  But Bryant fails to

present any contrary evidence that the trial court, in sentencing Bryant for the murder of

Tietjen, considered the non-capital victim witness testimony.

Indeed, as the PCR court noted, South Carolina statute provides that a trial court

must hear or review victim impact statements.  ECF No. 16-12 at 116 (citing S.C. Code

Ann. § 16-3-1550).  S.C. Code § 16-3-1550 states that "[t]he circuit . . . court must hear

or review any impact victim statement . . . before sentencing."  S.C. Code Ann. § 16-3-

1550(F).  It was reasonable for the PCR court to conclude that the trial court would have

erred had it proceeded to sentence Bryant on all crimes without hearing witnesses on the

non-capital offenses.  Thus, although the court reviews Bryant's claim anew, the court

reaches the same finding as the Magistrate Judge regarding the reasonableness of the

PCR court's finding.

### 2.  Application of Federal Law

The court reviews de novo Bryant's argument that the PCR court's decision was

contrary to established federal law.  Bryant first argues that the PCR court failed to

address the controlling precedents of Payne and Gardner.  In Payne, the United States

Supreme Court held that victim impact evidence was relevant to the determination of

whether to impose the death penalty at the sentencing phase of capital trials.  501 U.S. at

827.  In Gardner, the Supreme Court held that it was unconstitutional for a judge to

sentence a defendant to death based, in part, on a confidential presentence report because

18

the defendant did not have an opportunity to challenge the accuracy or materiality of the information.  430 U.S. at 351.  Bryant argues that together, the cases stand for the proposition that due process required that he be allowed to deny or explain the victim impact evidence presented against him.

The court finds that Payne and Gardner are not directly applicable here.  As the court found above, the PCR court was not unreasonable in finding that the trial court cabined the victim impact evidence from the three witnesses to its consideration of the non-capital offenses.  Based on that finding, the trial court would not have needed to address Payne or Gardner because the non-capital victim impact testimony was not applied to his death penalty sentence.  See Kelly v. California, 129 S. Ct. 564, 566 (2008) (explaining that Payne gave "prosecutors a powerful new weapon in capital cases") (emphasis added).  Bryant argues that Payne and Gardner cannot be superseded by state statute, but the PCR court did not elevate S.C. Code § 16-3-1550(F) over Payne.  Rather the interplay here is that in the absence of contrary authority on the issue, the PCR court concluded that the trial court did not err by hearing non-capital victim impact testimony prior to sentencing Bryant on all charges.[1]

Regardless, even if the cases did apply, the court finds that the PCR court's decision was not contrary to clearly established federal law concerning the right to confront victim-impact witnesses.  Even if the court found that the non-capital victim impact testimony could be considered as part of the death penalty phase testimony— which it does not—the record is clear that Bryant was offered the opportunity to respond

---

[1] Additionally, S.C. Code § 16-3-1550(F) is entirely consistent with Payne because Payne places no bar on victim impact testimony and in fact allows it.  Payne, 501 U.S. at 827.

to those witnesses but declined.  ECF No. 16-5 at 58.  Bryant's trial counsel also acknowledged that he did not seek to cross examine the non-capital victim witnesses.  ECF No. 16-8 at 92.  Indeed, the PCR court discussed this very issue in its order denying Bryant's Rule 59(e) motion, explaining that the trial court satisfied Gardner because Bryant was provided with the opportunity to confront and respond to the non-capital case impact witnesses.  ECF No. 16-12 at 153 ("Applicant did have the opportunity to confront and respond to the impact witnesses which satisfies the requirements of Gardner.").  Finally, the Magistrate Judge found that the PCR court was not unreasonable in determining that the trial court acted properly by applying the procedural safeguards for non-capital victim impact statements to the testimony because, again, that testimony was not related to Bryant's capital sentencing.  R&R at 39.  Bryant does not argue that Supreme Court precedent compels a different finding once the court has decided that the non-capital victim impact testimony was not part of the death penalty sentencing, and the court adopts the R&R's recommendation.

Next, the court reviews the PCR court's opinion to determine whether, pursuant to § 2254, the PCR court unreasonably applied Strickland to Bryant's ineffective assistance of trial counsel claim.  Because the court is employing the deferential standards of review under both Strickland and § 2254, the court's review is "doubly deferential."  Knowles, 556 U.S. at 123.  Under this doubly deferential standard, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The court finds that it was reasonable for Bryant's trial counsel to believe that the non-capital victim impact

testimony would not be considered by the trial court in the death penalty sentencing, and, accordingly, that it was reasonable not to object. Under the doubly deferential standard, the PCR court did not err in reaching that same conclusion. Importantly, even if this court questioned the reasonableness of trial counsel's decision, the court finds, at minimum, that fairminded jurists could disagree on that outcome.

## C. Ground Six

Ground Six alleges a violation of Brady v. Maryland, 373 U.S. 83 (1963), based on the government's purported failure to disclose evidence from Tietjen's computer to Bryant.

In the days following his crime spree, Bryant made multiple statements in which he recalled discussing Tietjen's preference for "young girls" with Tietjen and seeing pornography on Tietjen's computer. ECF No. 16-12 at 126–127. This included multiple statements in which Bryant recalled seeing a photograph on Tietjen's computer of a girl engaging in sex acts with a horse. Id. at 127–28. At the sentencing hearing, the state presented evidence that Bryant had burned Tietjen's eyes with a cigarette after killing him. One of the notes left by Bryant at Tietjen's house included a statement that said, "No more computer porn for this sick fucker." ECF No. 16-3 at 28.

In October 2004, David Givens ("Givens"), an agent with the South Carolina Law Enforcement Division, conducted a search of Tietjen's computer. Givens testified at the PCR evidentiary hearing that he was instructed to specifically look for the existence of child or bestiality pornography on Tietjen's computer. ECF No. 16-7 at 216. Givens recovered all photographs from Tietjen's image gallery, including "deleted photographs that [we]re [on] the computer," and his internet search history. Id. at 217. Givens

21

identified several pornographic movies in the computer's program files and pornographic sites in the search history, but "[n]o child or bestiality photos [were] located." Id. at 231. There is no dispute that Givens's notes and the electronic file that he created were not provided to either the defense or the state.

Bryant's trial counsel confirmed that they never received evidence from Tietjen's computer. Trial counsel testified at the PCR evidentiary hearing that had they received evidence, they would have "looked more" into whether Tietjen said something or if Bryant saw something that acted as a trigger for his actions. ECF No. 16-8 at 54. Additionally, Dr. Donna Marie Schwartz-Watts ("Dr. Schwartz-Watts"), a forensic psychiatrist who spoke with and observed Bryant, testified at the PCR hearing that "clearly pornography had a role in this crime" and "explained the mutilation of Mr. Teitjen' [sic] body." ECF No. 16-9 at 69. She later testified that "to me [seeing] the computer, it just verified, it gave some credibility to his accounts." Id. at 71. Bryant claims that the failure to turn over Givens's analysis of the contents of Tietjen's laptop prior to sentencing constituted a Brady violation, and the PCR court's decision finding otherwise was unreasonable and contrary to clearly-established law.

A Brady violation occurs when a defendant can show that the evidence at issue (1) was favorable to the defendant, (2) material to the defense, and (3) the prosecution had the evidence but failed to disclose it. Moore v. Illinois, 408 U.S. 786, 794–95 (1972); United States v. Sarihifard, 155 F.3d 301, 309 (4th Cir. 1998). Evidence is "material" when there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different. See Kyles v. Whitley, 514 U.S. 419, 433–34 (1995); United States v. Parker, 790 F.3d 550, 558 (4th Cir. 2015). Mere

speculation as to the materials is not enough.  United States v. Caro, 597 F.3d 608, 619 (4th Cir. 2010).  In Brady, the Supreme Court explained that its holding applied not only to suppression of materials at the guilt phase of trial, but also at the punishment phase.  Brady, 373 U.S. at 87; Basden v. Lee, 290 F.3d 602, 611 (4th Cir. 2002).

The PCR court found that Bryant failed to show how the computer records at issue were material to his sentencing.  The PCR court explained that the existence of pornography on Tietjen's computer could not have been a "trigger" for Bryant's actions because "it is uncontested . . . that [Bryant] did not claim to have viewed any images on the victim's computer until after he had killed Mr. Tietjen."  ECF No. 16-12 at 134 (emphasis in original).  The PCR court also considered whether the computer evidence would have impacted trial counsel's tactical decisions, ultimately finding that they would not have had any material effect.  Trial counsel testified at the PCR hearing that they were interested in the existence of evidence to potentially establish that "pornography was a 'trigger' for the Tietjen homicide."  Id. at 135.  But the PCR court noted that trial counsel admittedly could not explain how viewing the images after the death of Tietjen could have been a trigger for the murder.

As for Bryant's claim that the evidence on the computer may have triggered Bryant's mutilation of Tietjen's eyes, and the mutilation was used as aggravating evidence at sentencing, the PCR court found that this theory had already been identified and was presented by trial counsel and their experts.  For example, the PCR court noted that although Dr. Schwartz-Watts stated at the PCR hearing that she would have welcomed the information from the computer, she indicated herself that the additional information "would have corroborated her conclusions."  Id.  Finally, while the PCR

court acknowledged that the computer evidence should have been provided to the State

and defense prior to trial, the PCR court underscored that the lack of child or bestiality

pornography—the particular images that Bryant described seeing—confirmed that

Brady's materiality prong had not been met.  See id. at 135 (noting that the results of "the

computer assessment do[] not fully corroborate [Bryant]'s version because it did not

support the existence of either child pornography or bestiality").  Indeed, at the PCR

hearing, the state prosecutor did not challenge Bryant's lack of corroboration on the

general existence of pornography, undermining Bryant's contention that the provision of

the evidence would have altered the results of the proceedings.  Id.

  In light of the foregoing, the court does not find that the PCR court's rejection of

Bryant's Brady claim was contrary to or an unreasonable application of Brady.  The PCR

court carefully considered whether the evidence would have altered trial counsel's tactics

or the outcome of the proceedings.  Its decision was consistent with those of other federal

courts analyzing Supreme Court precedent in Brady.  See, e.g., United States v. Runyon,

994 F.3d 192, 210 (4th Cir. 2021) (rejecting the petitioner's Brady argument where the

allegedly exculpatory evidence "was not needed to establish the mitigator" such that it

was a mere "theoretical possibility" that the evidence would have changed anything at

sentencing).

  In his objections, Bryant claims that Cone v. Bell, 556 U.S. 449 (2009), is

controlling.  Bryant cites Cone for the proposition that it is not enough to dismiss a Brady

claim merely on the grounds that the suppressed evidence is cumulative.  But here, the

PCR court did not find that the evidence was cumulative of other evidence about Bryant's

supposed trigger.  Rather, the PCR court found that the evidence did not support Bryant's

claim that he had been triggered to commit the homicide based on pornography at all. To the extent Bryant is referring to the PCR court's findings on whether the suppressed evidence merely corroborated Dr. Schwartz-Watts's or trial counsel's prior conclusions, the court finds that the PCR court's analysis of those issues was concerned with whether the evidence would have altered trial counsel's tactics—a different consideration. See ECF No. 16-12 at 135; see also Goins v. Angelone, 52 F. Supp. 2d 638, 675 (E.D. Va. 1999), appeal dismissed, 226 F.3d 312 (4th Cir. 2000) (analyzing whether the trial counsel's strategy would have been significantly different had they learned about the suppressed evidence). Contrary to Bryant's assertion, the PCR court did not treat the computer evidence as cumulative evidence.

Finally, Bryant's continued reliance on his assertion that the existence of pornography in Tietjen's internet history "bolstered the mitigating nature of th[e] evidence" that pornography "prompted [Bryant] to mutilate [Tietjen's] eyes" is misplaced. ECF No. 124 at 9. The sentencing judge stated clearly that he was sentencing Bryant to death based on the aggravating circumstance of armed robbery. ECF No. 16-5 at 61–62 ("Regarding count one of that indictment 2006-GS-43-699, the charge of murder, the Court does find beyond a reasonable doubt the existence of the following statutory aggravating circumstance: that the defendant committed murder while in the commission of a robbery while armed with a deadly weapon, to wit, a Smith and Wesson .40-caliber semiautomatic handgun."). While the sentencing judge also noted that he reviewed "nonstatutory aggravating circumstances," id. at 62, the assertion that the mutilation was outcome-determinative in Bryant's death sentence is belied by the record. Bryant can only impermissibly rely on mere speculation to present such a claim. See

United States v. Agurs, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").  Based on the trial court's focus on the aggravating circumstance of armed robbery, Bryant has failed to prove that disclosure of the evidence would have altered the outcome of the proceedings.  Thus, the suppressed evidence does not place Bryant's sentencing in such a different light that confidence in his sentence is undermined.  See Richardson v. Branker, 668 F.3d 128, 149 (4th Cir. 2012).  In sum, the court finds that the PCR court had sufficient reason to (1) find that Bryant did not view any images on Tietjen's computer until after the murder, and (2) to conclude that the materiality prong for sustaining a Brady claim has not been met.  Under the standard that this court applies, the PCR court's decision is not unreasonable.

### D.  Ground Seven

In Ground Seven, Bryant alleges that he is intellectually disabled, and as such, his execution is barred under Atkins.  This argument was not raised in either Bryant's direct appeal or his first PCR application.  When Bryant attempted to add the claim to his second PCR application, and the state moved to dismiss it, the PCR court denied the motion to dismiss and allowed the claim to proceed.  ECF No. 89-37 at 114.  Bryant later admitted that he did not meet the diagnostic criteria for an intellectual disability but then attempted to amend his application to claim that he suffers from fetal-alcohol spectrum disorder ("FASD"), and that his execution would still be barred under an extension of Atkins.  A second PCR court found that the FASD-based claim was successive and time-barred.

26

As explained above, under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez, 566 U.S. at 9. Stated another way, where a petitioner fails to comply with a state procedural rule, and that failure provides an adequate and independent ground for the state's denial of relief, federal review will also be barred if the state court has expressly relied on the procedural default. Harris v. Reed, 489 U.S. 255 (1989); Coleman v. Thompson, 501 U.S. 722, 735 (1991).

Here, the PCR court that reviewed Bryant's amended PCR application applied S.C. Code § 17-27-90 and § 17-27-45, which bar successive applications and applications filed beyond the one-year statute of limitations, respectively. See ECF No. 89-38 at 23 ("This Court has found the offered amendments are time barred pursuant to S.C. Code § 17-27-45 and barred as improperly successive pursuant to S.C. Code § 17-27-90, and that Applicant failed to show any qualifying exception to those procedural bars."). "A state procedural rule is adequate if it is consistently or regularly applied" by state courts, Reid v. True, 349 F.3d 788, 804 (4th Cir. 2003), and a rule is independent "if it does not depend on a federal constitutional ruling," Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (alterations and internal quotation marks omitted). Bryant disputes that the state procedural rules applied were either adequate or independent.

First, Bryant argues that the state statutes applied by the PCR court and cited in the R&R are not consistently or regularly applied because they provide discretion for courts to allow applicants to amend their successive or time-barred applications. For example, Bryant notes that S.C. Code § 17-27-90 allows an exception where a court

identifies "a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original . . . application." Bryant's objection here is with how the PCR court applied the rules; he does not deny that the statutes themselves have been consistently or regularly applied to procedurally bar applications. As such, the court overrules this objection.

Next, Bryant argues that the PCR court's dismissal of his application was not premised on an independent state procedural rule because the dismissal partially relied upon an application of Atkins. Bryant previously raised this argument, and the Magistrate Judge considered and rejected it. The Magistrate Judge explained that even though Bryant "argues that the state court's conclusion that his FASD claim was procedurally defaulted was not independent because it was based on an interpretation of a federal constitutional ruling . . . . [t]he PCR court did not have to interpret Atkins at all in comparing the claims." R&R at 61. As such, "[t]he procedural bar applied by the PCR court was not dependent on federal law." Id. Now, in his objections, Bryant expands on his prior argument, contending that "[i]n ruling on the amendment, the PCR court then had to review and interpret Atkins, and its definition of intellectual disability, to conclude that Mr. Bryant's claim fell outside of the Atkins purview." ECF No. 124 at 13.

The court agrees with Bryant that Atkins presents a unique situation. In general, "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Harris, 489 U.S. at 264 n.10 (citing Fox Film Corp. v. Muller, 296 U.S. 207, 2010 (1935)). This principle is in place so that "a state court need not fear reaching the merits of a federal claim in an alternative holding." Id. (emphasis in

original).  But in determining whether a petitioner may raise <u>Atkins</u> for the first time in a successive habeas application, the PCR court does not merely consider <u>Atkins</u> in the alternative; it must directly confront <u>Atkins</u>.

The Fifth Circuit reached this very conclusion in <u>Busby v. Davis</u>, 925 F.3d 699 (5th Cir. 2019).  The Fourth Circuit does not appear to have weighed in on the issue, and in the absence of contrary controlling authority, the court finds <u>Busby</u> persuasive.  In <u>Busby</u>, the Fifth Circuit was confronted with the state court's decision to deny the petitioner's application as an abuse of the writ without considering the merits of the claim.  <u>Id.</u> at 706.  The statute that the court relied upon, Tex. Crim. Pro. Art. 11.071 § 5(a), provides that if a subsequent habeas application is filed after an initial application, a court may not consider the merits or grant relief.  The federal district court determined that the petitioner's <u>Atkins</u> claim was thus procedurally defaulted.  <u>Id.</u>  Upon review, the Fifth Circuit disagreed, explaining that while the state court was able to deny the petitioner's ineffective assistance of trial claims as procedurally barred, "the same cannot be said of the <u>Atkins</u> claim."  <u>Id.</u> at 707.  Specifically, the Fifth Circuit explained:

> [W]hen a defendant who was convicted post-<u>Atkins</u> raises an <u>Atkins</u> claim for the first time in a successive habeas application, the [state] court must determine whether the defendant has asserted facts, which if true, would sufficiently state an <u>Atkins</u> claim to permit consideration of the successive petition.  That determination is necessarily dependent on a substantive analysis of the Eighth and Fourteenth Amendments as applied to the factual allegations.

Id. (footnote omitted).  As such, the Fifth Circuit concluded that the state court's denial of

an Atkins claim meant that it considered the merits of the claim, "and the claim was not

procedurally defaulted."[2]  Id. at 709.

Relying on Busby, this court departs from the R&R in this narrow respect.

However, the court does not depart from the R&R's ultimate recommendation to grant

summary judgment in respondents' favor.  After determining that the petitioner's claims

were not procedurally defaulted, the Busby court went on to find that the state court had

considered the merits of his Atkins claim.  Id. at 710.  Similarly, this court may construe

the PCR court's ruling here as a decision on the merits.  The PCR court fully confronted

the Atkins issue in its order:

> While Applicant may suffer from some form of FASD or associated
> condition, and may have an impaired brain, this Court does not believe
> Applicant met his burden of proof that he possesses an intellectual disability
> consistent with the specific condition at issue.  It is only that condition that
> is the basis of this litigation and only that condition that needs to be
> proven . . . . It appears to the Court, based on the information presented, that
> Applicant does not have an intellectual disability as defined under 44-20-
> 30, and Franklin, Stanko, and Blackwell, to qualify for the Atkins
> exemption.

ECF No. 89-38 at 14.  Bryant himself acknowledges that "[t]he PCR court discussed at

length the holding in Atkins, the meaning of intellectual disability, and a diagnosis of

FASD."  ECF No. 124 at 13.  Under a merits review, the court returns to the AEDPA's

---

[2] To be sure, the Fifth Circuit was analyzing the state court's application of Tex.
Crim. Pro. Art. 11.071 § 5(a)(3) and whether Atkins's bar to the execution of
intellectually disabled persons fell within an exception to the rule.  But Busby's analysis
applies with equal force here as the South Carolina Supreme Court recently issued a per
curium opinion that reversed the lower court's dismissal of an Atkins claim as untimely
and successive.  Woods v. State, 2019 WL 6898088 (S.C. Dec. 18, 2019) (per curiam).
As the R&R observed in a footnote, the opinion, although not binding, likely signals
South Carolina' acceptance that Atkins created one of the few exceptions in which
successive applications will be allowed.

30

standard of reviewing for whether the state court adjudication was either contrary to or an unreasonable application of clearly established federal law. The court does not review Bryant's <u>Atkins</u> claim <u>de novo</u>, even if the proper standard of review was not briefed before. <u>Busby</u>, 925 F.3d at 711, 714.

The court does not find that the PCR court's ruling was unreasonable or contrary to clearly established law. The PCR court found that there was no clinical support for setting aside Bryant's testing results in favor of finding that FASD constitutes the functional equivalent of an intellectual disability. ECF No. 89-38 at 14. As the R&R further explained, <u>Atkins</u> does not create a categorical bar from executing prisoners who suffer from FASD. R&R at 63 (citing <u>Garza v. Shinn</u>, 2021 WL 5850883, at *105 (D. Ariz. Dec. 9, 2021) ("There is no authority holding that individuals with FASD are exempt from capital punishment.")). To summarize, the court finds that the PCR court's dismissal of Bryant's <u>Atkins</u> claim was not premised on independent state procedural grounds. However, the court finds that the PCR court considered Bryant's claim on the merits, and its decision to dismiss the claim was not unreasonable or contrary to clearly established law.

### E. Ground Eight

Under Ground Eight, Bryant alleges that his trial counsel was ineffective for failing to conduct an adequate investigation into his background, history, character, and mental illness. He further alleges that trial counsel failed to provide available information to the mental health experts performing Bryant's mental health evaluation and failed to present all the available mitigation evidence during sentencing. This ground was raised in Bryant's third PCR application, and the state court found it to be successive

and time-barred.  Once again, Bryant argues that the PCR court's procedural bar was not based on an adequate and independent state procedural rule.  The court finds that the applicable state statutes, S.C. Code §§ 17-27-45 and 17-27-90, are adequate and independent procedural rules.  See Scott v. Bazzle, 2007 WL 2891541, at *5 (D.S.C. Sept. 28, 2007) (noting that South Carolina's statute of limitations for PCR applications is an "independent and adequate state ground[]").  Unlike before, Bryant does not raise any other ground for arguing that the PCR court's decision was premised on a separate constitutional ruling.

Additionally, Bryant argued in his response to the motion for summary judgment that his failure to raise the claim in state court should be excused for cause and prejudice.  Specifically, Bryant contended that his PCR counsel performed deficiently by failing to develop and present Bryant's claims that his trial counsel rendered ineffective assistance by failing to investigate his background.  ECF No. 104 at 71.  Bryant requested an evidentiary hearing before this court to prove that his PCR counsel acted deficiently.  Id.

Curiously, Bryant now appears to be arguing in his objections that his PCR counsel also failed to conduct an adequate mitigation investigation and to discover information about Bryant, such as the fact that he failed to meet developmental milestones in his childhood, had difficulties in school, and that his mother drank alcohol and smoked marijuana during her pregnancy with him.  ECF No. 124 at 19.  These claims are not the same claims that were presented before and not the type contemplated by Martinez v. Ryan, which governs when a petitioner may seek to excuse a procedural default for inadequate assistance of counsel.  566 U.S. at 9.  Bryant's argument that his PCR counsel rendered ineffective assistance for failing to conduct an adequate mitigation

investigation is thus not properly before the court.  See Samples v. Ballard, 860 F.3d 266,

275–76 (4th Cir. 2017) (finding that the district court did not abuse its discretion in

declining to entertain a freestanding claim of ineffective assistance of state habeas

counsel as "Martinez did not create such a freestanding claim").  To the extent that

Bryant is arguing that the PCR counsel's failure to conduct an investigation led to their

failure to raise an ineffective assistance of trial counsel claim in the PCR proceedings,

such an argument is unsubstantiated.  Even if the court were to consider the merits of

Bryant's argument, the court finds that PCR counsel did not act deficiently.  PCR counsel

presented evidence on Bryant's mental illness and prior history at the evidentiary hearing,

reflecting their preparation on those issues.  See ECF No. 16-9 at 61 (reflecting that PCR

counsel presented testimony from Dr. Schwartz-Watts).  Dr. Schwartz-Watts specifically

testified about Bryant's "post traumatic stress disorder secondary to some sexual abuse

that he experienced in his past," indicating that PCR counsel was aware of the evidence.

Id. at 65.  Under Strickland, the court finds that PCR counsel's decision to rely on Dr.

Schwartz-Watts's testimony—in lieu of an "investigation"—did not fall below an

objective standard of reasonableness.

The court turns to Bryant's original claim that his procedural default may be

excused based on his PCR counsel's deficiency in failing to raise the claim.  See Amend.

Pet. at 76.  In Martinez, the Supreme Court held that "[i]nadequate assistance of counsel

at initial-review collateral proceedings may establish cause for a prisoner's procedural

default of a claim of ineffective assistance at trial."  Martinez, 566 U.S. at 9.  To establish

cause under Martinez, a petitioner must demonstrate: (1) that his PCR counsel was

ineffective under <u>Strickland</u> and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." <u>Id.</u> at 14.

Given that Bryant's objections focus on allegations that PCR counsel failed to conduct their own investigation, the court agrees with the R&R that Bryant fails to rebut the presumption under <u>Strickland</u> that PCR counsel's failure to raise the claim fell "within the wide range of reasonable professional assistance." <u>See</u> <u>Strickland,</u> 466 U.S. at 689. Moreover, under the second prong, the court finds that the underlying claim lacks merit, as the record demonstrates that trial counsel retained experts and investigated Bryant's background and mental health. <u>See, e.g.</u>, ECF No. 16-4 at 40 (reflecting that trial counsel presented testimony from Dr. Schwartz-Watts); ECF No. 16-4 at 160 (same, for Dr. Marty Loring). Because Bryant fails to show that PCR counsel's performance was deficient or that the underlying ineffective-assistance-of-counsel claim is a substantial one, Bryant has failed to show that procedural default should be excused under <u>Martinez</u>.

### F. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 proceedings provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. <u>Miller-El</u>, 537 U.S. at 336–38. The Magistrate Judge recommended that the

court find that Bryant does not meet this standard because there is nothing debatable about the court's resolution of his petition. Bryant objects.

For the reasons discussed in this order, the court denies a certificate of appealability for all grounds raised, apart from Ground Seven. The court finds that in the absence of clearly-defined precedent, reasonable jurists may debate whether the court's decision on Bryant's <u>Atkins</u> claim should have been resolved in a different manner. In all other respects, the court finds, for the same reasons stated in this order, that the legal standard for the issuance of a certificate of appealability has not been met. Accordingly, the court will deny a certificate of appealability except as specified for Ground Seven.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the R&R, **GRANTS** respondents' motion for summary judgment, and **DENIES** the petition for writ of habeas corpus. Additionally, the court **DENIES** a certificate of appealability except for Ground Seven as raised in Bryant's amended petition.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 18, 2022**
**Charleston, South Carolina**