### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### BEAUFORT DIVISION

| | |
|---|---|
| STEPHEN COREY BRYANT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 9:16-cv-01423-DCN-MHC |
| ) | |
| BRYAN P. STIRLING, *Commissioner, South* ) | |
| *Carolina Department of Corrections*; LYDELL ) | **ORDER** |
| CHESTNUT, *Deputy Warden, Broad River* ) | |
| *Correctional Institution Secure Facility*, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

Petitioner Stephen Corey Bryant ("Bryant") is a death row inmate in the custody of the South Carolina Department of Corrections ("SCDC"). He filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 14, 2016. ECF No. 30. This matter is before the court on cross-motions to alter or amend the court's order granting respondents Bryan P. Stirling ("Stirling") and Lydell Chestnut's ("Chestnut," together, "respondents") motion for summary judgment. ECF Nos. 130, 131. For the reasons set forth below, the court denies both motions to alter or amend.

## I.  BACKGROUND

Bryant pled guilty to three counts of murder, two counts of first-degree burglary, one count of second-degree burglary, two counts of assault and battery with intent to kill, one count of second-degree arson, armed robbery, possession of a stolen handgun, and threatening the life of a public employee. Circuit Court Judge Thomas A. Russo sentenced Bryant to death for the murder of one of the three murder victims, Willard Tietjen ("Tietjen").

1

Familiar as the parties are with the facts, the court provides a brief summary of the case, as recited by the Supreme Court of South Carolina. Starting on October 5, 2004, Bryant engaged in an eight-day crime spree that involved multiple robberies and murders. Bryant started by casing isolated rural homes for vulnerable victims. He would appear midday at homes, claiming to be looking for someone or having car trouble. Over the course of the eight days, Bryant burglarized several homes and murdered three individuals. In Tietjen's case, Bryant went to Tietjen's home, shot him nine times, and looted his house. Bryant answered several calls made to Tietjen's cell phone by Tietjen's wife and daughter, telling them that he was the "prowler" and that Tietjen was dead. He burned Tietjen's face and eyes with a cigarette. Before leaving, Bryant left two messages on the walls. One said, "victim number four in two weeks, catch me if you can." On another wall, he wrote the word "catch" and some letters in blood. While awaiting trial, Bryant threatened a correctional officer and attacked and seriously injured another.

Bryant was indicted in Richland County in December 2004 and in Sumter County in July 2006. ECF No. 16-12 at 162–89. Prior to and at his guilty plea, Bryant was represented by three attorneys (both individually and collectively, "trial counsel"). Jack D. Howle, Jr. ("Howle") and James Babb ("Babb") handled preliminary matters and trial preparation until July 18, 2008, when John D. Clark ("Clark") was appointed to replace Babb. Due to Babb's prior involvement, all three attorneys were present for Bryant's guilty plea, which Bryant entered on August 18, 2008. ECF No. 16-6 at 60–107. On September 11, 2008, Judge Russo sentenced Bryant to death for the murder of Tietjen. ECF No. 16-5 at 61–63.

Bryant appealed his case to the Supreme Court of South Carolina.  On January 7, 2011, the Supreme Court of South Carolina affirmed Bryant's convictions and sentences. ECF No. 16-6 at 178.  Bryant petitioned for rehearing, which the court denied on January 24, 2011.  Id. at 184.  On May 10, 2011, Bryant filed an application for post-conviction relief ("PCR").  Id. at 112.  On May 21, 2011, Bryant filed an amended PCR application. ECF No. 16-7 at 44.  On October 1, 2012, Bryant filed a second amended PCR application.  Id. at 144.  The PCR court held an evidentiary hearing from October 1–3, 2012, id. at 151, and on December 4, 2012, the PCR court dismissed Bryant's applications, ECF No. 16-12 at 84.  Bryant filed a motion to reconsider, which the PCR court denied.  Id. at 146.  Bryant then filed a petition for writ of certiorari with the Supreme Court of South Carolina.  ECF No. 16-34.  On March 4, 2015, the Supreme Court of South Carolina denied Bryant's petition, ECF No. 16-39.  On May 6, 2015, the Supreme Court of South Carolina denied Bryant's petition for rehearing, ECF No. 16-41, and issued a remittitur, ECF No. 16-42.

On June 19, 2015, Bryant commenced this action by filing a motion for stay of execution and a motion to appoint counsel.  ECF No. 1.  Bryant filed his petition for writ of habeas corpus pursuant to § 2254 on January 14, 2015.  ECF No. 30.  Bryant filed an amended petition on April 28, 2016.  ECF No. 37, Amend. Pet.  Along with his amended petition, Bryant contemporaneously filed a motion to stay his habeas proceeding pending the exhaustion of his state court proceedings.  ECF No. 38.  The court granted the motion to stay on July 26, 2016.  ECF No. 52.

On May 3, 2016, Bryant filed two additional PCR applications in state court.[1] ECF Nos. 89-2 at 3, 89-38 at 27.  The same PCR court presided over both actions and initially allowed Bryant's PCR action based on <u>Atkins v. Virginia</u> to proceed.  ECF No. 89-37 at 110–16 (citing <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002) (holding that executions of intellectually disabled criminals constituted cruel and unusual punishments prohibited by the Eighth Amendment)).  The PCR court denied Bryant's other application—based on his trial counsel's failure to raise claims that should have been discovered—as successive and time-barred.  ECF Nos. 89-6, 89-8.  Bryant moved to alter or amend the court's order, and the PCR court denied the motion on September 16, 2016.  ECF No. 89-9.  Bryant appealed the denial, ECF No. 89-10, and the Supreme Court of South Carolina dismissed the appeal on February 7, 2017, ECF No. 89-15.

Bryant's surviving application asserting the <u>Atkins</u> claim was thereafter assigned to a new judge, Judge William H. Seals, Jr.  ECF No. 89-37 at 117.  Bryant twice moved to amend his PCR application, and the PCR court denied both motions to amend, ruling that the application would proceed only on Bryant's claim of intellectual disability.  <u>Id.</u> at 126, 143.  On October 1, 2018, the PCR court conducted an evidentiary hearing on Bryant's <u>Atkins</u>-claim application.  ECF No. 89-37 at 146.  On January 3, 2019, the PCR court denied the application.  <u>Id.</u> through ECF No. 89-38 at 24.  Bryant filed a motion to reconsider, which was denied on March 5, 2019.  ECF No. 89-38 at 25.  Both Bryant and respondents filed petitions for writ of certiorari, and the Supreme Court of South Carolina denied both petitions on May 11, 2021.  ECF No. 52.  The Supreme Court of South

---

[1] The court refers to Bryant's counsel at both the preliminary PCR proceedings and the PCR proceedings following the stay in the habeas case as "PCR counsel" but notes the distinction where necessary.

Carolina denied Bryant's subsequent petition for rehearing on May 21, 2021. ECF No. 89-54. This ended Bryant's state court proceedings, and the court lifted the stay in Bryant's habeas proceeding, effective October 4, 2021. ECF No. 87.

On October 15, 2021, respondents filed their motion for summary judgment. ECF No. 91. Bryant filed his response and traverse on February 7, 2022, ECF No. 104, and respondents replied on April 8, 2022, ECF No. 114. On April 19, 2022, Magistrate Judge Molly H. Cherry issued the report and recommendation ("R&R"), recommending that the court grant respondents' motion for summary judgment. ECF No. 116, R&R. On October 18, 2022, the court adopted the R&R with one modification. ECF No. 128. Specifically, the court granted respondents' motion for summary judgment but held that Bryant was entitled to a certificate of appealability as to Ground Seven of Bryant's amended petition. On November 15, 2022, Bryant filed a motion to alter or amend judgment. ECF No. 130. Respondents responded to the motion on November 29, 2022. ECF No. 133. On November 15, 2022, respondents filed their own motion to alter or amend judgment. ECF No. 131. Bryant responded to the motion on November 28, 2022, ECF No. 132, and respondents replied on December 6, 2022, ECF No. 134. As such, Bryant's claims are ripe for resolution.

## II.  STANDARD

### A.  Motion to Alter or Amend

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment. The rule provides an "extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks and citation omitted). The Fourth Circuit recognizes "only

three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." Wilder v. McCabe, 2012 WL 1565631, at *1 (D.S.C. May 2, 2012) (citing Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993)).  To qualify for reconsideration under the third exception, an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to strike the court "with the force of a five-week-old, unrefrigerated dead fish." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (quoting Bellsouth Telesensor v. Info. Sys. & Networks Corp., 1995 WL 520978, *5 n.6 (4th Cir. 1995) (unpublished)).  Ultimately, the decision whether to reconsider an order resulting in judgment pursuant to Rule 59(e) is within the discretion of the district court.  See Hughes v. Bedsole, 48 F.3d 1376, 1382 (4th Cir. 1995).

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

6

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most

favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### C.  Habeas Corpus

#### 1.  Standard for Relief

This court's review of a habeas petition is governed by 28 U.S.C. § 2254, which

was amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996,

Pub. L. No. 104-132, 110 Stat. 1213.  See Lindh v. Murphy, 521 U.S. 320 (1997).

Section 2254(a) provides federal habeas jurisdiction for the limited purpose of

establishing whether a person is "in custody in violation of the Constitution or laws or

treaties of the United States."  This power to grant relief is limited by § 2254(d), which

provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim – (1) resulted in a decision that was
> contrary to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The "contrary to" and "unreasonable application" clauses contained

in § 2254(d)(1) are to be given independent meaning—in other words, a petitioner may

be entitled to habeas corpus relief if the state court adjudication was either contrary to or

an unreasonable application of clearly established federal law.

A state court decision can be "contrary to" clearly established federal law in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Section 2254(d)(1) restricts the source of clearly established law to holdings of the Supreme Court as of the time of the relevant state court decision. See id. at 412; see also Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

For an "unreasonable" application of the law, a state court decision can also involve an unreasonable application of clearly established federal law in two ways: (1) "if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407.

However, "an unreasonable application of federal law is different from an incorrect application of federal law," and "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410–11 (emphasis in original). Indeed, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all

8

instances, objectively unreasonable." Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams, 529 U.S. at 410).

### 2. Procedural Default

A petitioner seeking habeas relief under § 2254 may only do so once the petitioner has exhausted all remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012); see also Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (explaining that generally, "[f]ederal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred.").

### 3. Ineffective Assistance of Counsel

"The doctrine barring procedurally defaulted claims from being heard is not without exceptions." Martinez, 566 U.S. at 10. One such exception occurs when a prisoner seeking federal review of a defaulted claim can show there was cause for the default and prejudice based on ineffective assistance of counsel. Id. "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." In order to establish such cause, the following elements must be established:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only

"ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013) (quoting Martinez, 566 U.S. at 14, 17–18). A claim is "substantial" if it has "some merit." Martinez, 566 U.S. at 14.

Additionally, a petitioner asserting ineffective assistance of counsel must demonstrate that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is deficient when "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When considering prejudice in the context of a death penalty case, "the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id. at 695.

Because "[s]urmounting <u>Strickland</u>'s high bar is never an easy task," <u>Padilla v.</u>

<u>Kentucky</u>, 559 U.S. 356, 371 (2010), "[e]stablishing that a state court's application of

<u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult," <u>Harrington v.</u>

<u>Richter</u>, 562 U.S. 86, 105 (2011).  The Supreme Court has explained that "[t]he standards

created by <u>Strickland</u> and § 2254(d) are both 'highly deferential.'"  <u>Id.</u> (quoting

<u>Strickland</u>, 466 at 689).  Therefore, a court's review of an ineffective assistance counsel

claim under the § 2254(d)(1) standard is "doubly deferential."  <u>Knowles v. Mirzayance</u>,

556 U.S. 111, 123 (2009).

### III.   DISCUSSION

Bryant's amended petition raised nine grounds for relief.  Bryant objected to the

magistrate judge's findings on Grounds Two, Three, Six, Seven, and Eight.  In its

summary judgment order, the court reviewed Grounds One, Four, Five, and Nine for

clear error and, finding none, dismissed those grounds for relief.  The court then

conducted a <u>de novo</u> review and dismissed Grounds Two, Three, Six, Seven, and Eight.

The court further denied a certificate of appealability for all grounds raised, except for

Ground Seven.

Now, in his instant motion, Bryant moves the court to alter or amend its order as

to Grounds Six and Eight.  In the alternative, Bryant requests that the court issue a

certificate of appealability for those claims.  In addition to opposing Bryant's motion,

respondents filed their own motion to alter or amend, wherein they request that the court

vacate the certificate of appealability that it granted as to Count Seven.  The court

considers Grounds Six, Eight, and the certificate of appealability issue in turn.

11

### A. Ground Six

In Ground Six of his amended petition, Bryant alleges that the government committed a <u>Brady</u> violation by failing to disclose evidence from Tietjen's computer to Bryant.  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

In October 2004, the South Carolina Law Enforcement Division ("SLED") conducted a search of Tietjen's computer with a focus on finding evidence of child or bestiality pornography.  ECF No. 16-7 at 216.  SLED Agent David Givens ("Givens") testified that he recovered "several pornographic movies" in the laptop's program files and links to pornography in the internet search history and temporary internet files, but "[n]o child or bestiality photos [were] located."  ECF No. 16-3 at 231.  Of note, the internet browsing history showed someone had visited adult pornography websites on the day prior to Tietjen's murder.[2]  ECF No. 16-8 at 18.  Bryant argued—and now maintains—that the browsing history would have been relevant at trial for corroborating Bryant's statements to the police and to explain the impetus for his murder and his port-mortem mutilation of Tietjen's eyes.  The court previously explained the relevant background of the search in its order on the motion for summary judgment.

---

[2] Bryant argues, for the first time, that South Carolina law allows the court to infer that a participant in depicted sexual activity is a minor based on the content's title and other information.  ECF No. 130 at 2 n.1 (citing S.C. Code §§ 16-15-395(B) and 405(B)).  Bryant argues that based on the titles in Tietjen's viewing history from the day prior to the murder, "[t]he court's insistence that Mr. Tietjen had not viewed child pornography is misplaced."  <u>Id.</u>  But Bryant ignores that this court was not the one that reached that finding.  The PCR court held that the internet history from the prior day consisted only of adult pornography.  ECF No. 16-7 at 134.  The PCR court relied on testimony from Givens, who stated that his own analysis did not suggest the content depicted underage girls, despite the content's titles.  ECF No. 16-12 at 253 (103:22–24) (Q: But your, I guess, analysis didn't show any persons under the age of 18; correct? A: Correct.").  The court cannot say that the PCR court's conclusion was unreasonable based on the evidence presented to it at the evidentiary hearing.

> In the days following his crime spree, Bryant made multiple statements in which he recalled discussing Tietjen's preference for "young girls" with Tietjen and seeing pornography on Tietjen's computer. ECF No. 16-12 at 126–27. This included multiple statements in which Bryant recalled seeing a photograph on Tietjen's computer of a girl engaging in sex acts with a horse. <u>Id.</u> at 127–28. At the sentencing hearing, the state presented evidence that Bryant had burned Tietjen's eyes with a cigarette after killing him. One of the notes left by Bryant at Tietjen's house allegedly said, "No more computer porn for this sick fucker." ECF No. 16-3 at 28.

ECF No. 128 at 21.

Although there is no dispute that the laptop and its files were never provided to the state or to trial counsel, the PCR court held that Bryant "failed to prove the materiality prong of <u>Brady</u>." ECF No. 16-7 at 134. In its prior order, this court determined that the PCR court's decision did not involve an unreasonable application of federal law and was not based on an unreasonable determination of the facts. "[T]o obtain federal habeas relief, 'a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." <u>De Castro v. Branker</u>, 642 F.3d 442, 449 (4th Cir. 2011) (quoting <u>Harrington</u>, 562 U.S. at 103). Now, Bryant asks the court to apply another layer of clear-error review to the already-deferential habeas standard.

Bryant's latest motion focuses almost exclusively on whether Bryant's "character and actions after the murder"—namely, his post-mortem mutilation of Tietjen's eyes— played a part in his death sentence. <u>See</u> ECF No. 130 at 5–7. Bryant argues that since those circumstances were clearly aggravating factors, as reflected by the state's closing argument, the materiality prong is easily met. But Bryant's argument puts the cart before the horse. As the PCR court, magistrate judge, and this court explained, the browsing

history was not material because it did not consist of the type of evidence that Bryant claims would have mitigated the state's arguments in the first place.

To recount, the PCR court provided no less than three reasons why the result of the proceedings would not have been different had the state disclosed Givens's report. First, it was "uncontested" that Bryant "did not claim to have viewed any images on the victim's computer until <u>after</u> he had killed Mr. Tietjen." ECF No. 16-7 at 134 (emphasis in original). Therefore, the PCR court reasoned, any pornography that was on the computer could not have been a "trigger" for the murder. <u>Id.</u> Second, the evidence "did <u>not</u> corroborate" Bryant's statements about seeing bestiality on Tietjen's laptop because Givens never located any evidence of bestiality. <u>Id.</u> (emphasis in original). Third, Bryant's forensic psychiatrist, Dr. Donna Marie Schwartz-Watts ("Dr. Schwartz-Watts") indicated that if it were the case that the laptop did not contain evidence of child pornography or bestiality, the browsing history would have merely corroborated her conclusions. <u>Id.</u> at 135.

The magistrate judge thoroughly reviewed the PCR order and the record, and the magistrate judge reached several separate conclusions. First, it appeared Bryant was "no longer pursuing" the contention that "the pornography on Tietjen's computer served as the trigger for the murder itself." R&R at 56. Bryant did not object to the finding, and to the extent he is now reviving the argument that the evidence "explains the impetus for [] his murder of Tietjen," ECF No. 130 at 2, the court will not consider it. Second, even if the existence of adult pornography on Tietjen's internet browsing history from the day before the murder "partially corroborated" Bryant's statements to the police about the post-mortem mutilation, Bryant's trial counsel had already presented the theory such that

the PCR court reasonably determined the additional corroboration would have only had a "marginal impact." R&R at 56. Finally, although the PCR court did not address the issue of Bryant's alleged history of being sexually abused as a child, the magistrate judge noted that the link between the forensic evidence and the allegations about his childhood was tenuous, as the truth of one was "not determinative of the truth of the other." Id.

In its order, the court resolved the disputes about the evidence in similar fashion. See ECF No. 128 at 22–25. The court noted that even if it were to believe Bryant's account about the pornography on the laptop, the sentencing judge did not state that the post-mortem mutilation was an aggravating factor, so it was doubtful that the evidence would have changed the outcome of the case. Id. at 25–26. During the sentencing hearing for the count related to Tietjen's murder, the sentencing judge noted that evidence had been presented to establish a statutory aggravating circumstance of armed robbery, and both sides had also submitted "other evidence . . . establishing [] nonstatutory aggravating circumstances" and "statutory and nonstatutory mitigating circumstances." ECF No. 16-5. Bryant seizes upon this portion of the court's order, arguing that although South Carolina law did not require the sentencing judge to disclose more than the statutory aggravating circumstance of armed robbery, this court should have looked to the solicitor's closing argument to realize that Bryant's actions after the murder served as the primary aggravating factor. Bryant claims the browsing history would therefore have mitigated the state's aggravating evidence.

For the reasons discussed above, reconsideration of the court's decision on what type of argument was material to the sentencing court would not be proper without also reconsidering the court's other findings on the materiality of the browsing history itself.

The court does not find clear error regarding its other findings. The PCR court reasonably concluded that trial counsel sufficiently presented the theory about the motivation for the mutilation to the sentencing judge, even without the withheld laptop evidence. The PCR court did not wrongly apply Supreme Court precedent in reaching that decision. Additionally, the PCR court reasonably concluded that the withheld files did not consist of evidence that would have fully corroborated Bryant's account, as further outlined by the magistrate judge.

Finally, for his benefit, the court considers Bryant's claim that the state made a statement in its closing argument which would have been proven false by the withheld laptop files. According to Bryant, the sentencing judge permitted the state to argue that Bryant "got on [the Tietjens'] computer and began to visit porn sites by his own choosing, not sites from [the Tietjens]." ECF No. 130 at 5 (quoting ECF No. 16-5 at 32). The magistrate judge thoroughly considered this issue. R&R at 57–58 n.14. First, the magistrate judge noted the possibility—as raised by Givens—that Bryant may have deleted his own internet browsing history. More importantly, the statement at issue was part of the solicitor's broader argument about how freely Bryant moved around the house after the murder, "like he owned the place." ECF No. 16-5 at 31. As the magistrate judge noted, the statement "was not otherwise a focus of the solicitor's argument, so it is doubtful that a rebuttal would have been impactful." R&R at 57. The court agrees and finds that it was not clear error to afford Bryant's previous argument about the closing argument minimal weight. Ultimately, the PCR court did not issue a decision that was contrary to clearly-established federal law or that resulted in an unreasonable application of the facts in the case.

Thus, the court denies Bryant's motion to reconsider the court's previous order dismissing Ground Six and denies Bryant's alternative motion to reconsider the court's order denying a certificate of appealability for Ground Six.

### B.  Ground Eight

Under Ground Eight, Bryant alleged that his trial counsel was ineffective for failing to conduct an adequate investigation into his background, history, character, and mental illness.  He further alleges that trial counsel failed to provide available information to the mental health experts performing Bryant's mental health evaluation and failed to present all the available mitigation evidence during sentencing.  This ground was raised in Bryant's third PCR application, and the state court found it to be successive and time-barred under S.C. Code §§ 17-27-90 and 17-27-45.  ECF No. 89-38 at 23.  In his petition, Bryant argued that his failure to raise the claim in state court should be excused because of ineffective assistance of counsel.  Specifically, Bryant argued that prior PCR counsel did not develop and present evidence of trial counsel's failure to investigate, which prejudiced Bryant's ability to claim he suffers from fetal-alcohol spectrum disorder ("FASD").  ECF No. 104 at 71.

Under Martinez, Bryant may argue that initial PCR counsel was ineffective for failing to raise trial counsel's ineffectiveness.  Martinez, 566 U.S. at 10 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").  But as the court noted in its prior order, the "curious[]" issue was that Bryant argued for the very first time in his objections that PCR counsel themselves failed to conduct an adequate investigation.  ECF No. 128 at 32.  In his summary judgment response, Bryant had only

argued that his initial PCR counsel "were [] potentially conflicted" and "failed to raise those claims." ECF No. 104 at 71. Although Bryant had briefly noted in his successive PCR application that PCR counsel "were ineffective for not investigating" the grounds, ECF No. 89-2 at 7, that was not the focus in Bryant's response and traverse in this case. See ECF No. 104 at 71. After the magistrate judge determined that there was minimal evidence of a conflict or deficient performance, Bryant then shifted his focus back to the lack of investigation on PCR counsel's part. Accordingly, the court finds it did not clearly err by affording minimal weight to the argument during its review. See Samples v. Ballard, 860 F.3d 266, 274–75 (4th Cir. 2017) (explaining that in the habeas context, a district court is required to consider legal arguments directed at a specific ground for relief, regardless of whether they were raised before the magistrate judge, but may decline to consider an "ineffective assistance of counsel claim raised for the first time in the objections to the magistrate judge's recommendations") (first citing Cooper v. Ward, 149 F.3d 1167, at *1 (4th Cir. 1998) (unpublished); then citing White v. Keller, 2013 WL 791008, at *4 (M.D.N.C. Mar. 4, 2013)); see also United States v. George, 971 F.2d 1113 (4th Cir. 1992)).

Setting aside the untimeliness of the argument, the court finds that reconsideration on the merits is improper as well. The court's initial discussion of PCR counsel's preparation mirrored the standard under Martinez. To establish cause under Martinez, a petitioner must demonstrate: (1) that his PCR counsel was ineffective under Strickland and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," i.e., "that the claim has some merit." Martinez, 566 U.S. at 9. The court determined that neither prong had been met because (1) PCR counsel's decision to rely

18

on Dr. Schwartz-Watt's testimony in lieu of conducting a deeper investigation fell within the wide range of reasonable professional assistance, and (2) Bryant's underlying claim lacked merit because trial counsel, too, had investigated Bryant's background and history of mental illness, and retained experts accordingly.  ECF No. 128 at 33–34.

Now, in his motion to alter or amend, Bryant argues that both the magistrate judge and this court ignored "new facts" that were discovered during the federal habeas proceedings, which were "available to Bryant's trial and PCR counsel."  ECF No. 130 at 8 (citing ECF No. 39 at 71–73).[3]  The "new facts" raised in Bryant's petition consist of affidavits from Bryant's aunt, mother, and fifth grade teachers.  The affidavits include, inter alia, testimony that Bryant suffered abuse at the hands of his father, who himself had been abused by Bryant's paternal grandfather; that Bryant's mother drank and smoked marijuana while pregnant with Bryant; that Bryant was sexually abused when he was thirteen years old; and that Bryant had been "slow" since childhood and struggled through school.  ECF No. 37 at 71–73.  After this case was stayed so that Bryant could exhaust his state-court remedies, Bryant retained additional experts to evaluate him.  Notably, Dr. George Woods ("Dr. Woods"), a neuropsychiatrist, conducted a neuropsychiatric examination on Bryant and determined he had signs of "dysmorphology"—i.e., physical signs in his facial bones that his mother drank during pregnancy.  ECF No. 89-40 at 174–75.  After considering other factors, Dr. Woods concluded that Bryant possesses signs of FASD and suffers from a "mild intellectual disability."  ECF No. 89-42 at 128.  Dr. Caroline Everington ("Dr. Everington"), an

---

[3] ECF No. 39 was a procedural entry changing the case number of this case, and the court assumes Bryant is referring to ECF No. 37, which is his first amended habeas petition.

19

expert in special education, testified that Bryant's behavior was "consistent with someone with [an] intellectual disability," including FASD.  Id. at 42–43.

To be clear, Ground Eight in the petition concerns trial counsel's failure to investigate.  By virtue of arguing that he has cause to bring the claim despite procedurally defaulting on it, Bryant also contends that PCR counsel failed to adequately investigate.  Importantly, then, Ground Eight is not about whether the new evidence would have persuaded the state court.  In accordance with that principle, the court does not find it was clear error to weigh the information that trial and PCR counsel possessed just as much as—if not more than—the evidence that Bryant later uncovered (and now avers should have been discovered).  In Strickland, the Supreme Court explained:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes that particular investigation unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 691 (emphasis added).  "Thus, counsel must conduct a reasonable investigation, thorough enough to make an informed decision regarding which mitigating evidence to present."  Mahdi v. Stirling, 2018 WL 4566565, at *16 (D.S.C. Sept. 24, 2018).

Here, the record reflects that initial PCR counsel made an objectively reasonable investigation in light of the evidence available to counsel at the time.  Certainly, PCR counsel did not appear to have information that was as sharpened as the new evidence raised by Bryant.  Even so, PCR counsel had information from Dr. Schwartz-Watts, who investigated many of the same conditions and circumstances raised in the new evidence,

even though again, her records may not have been as refined as what was produced later.

During the initial PCR proceedings, Dr. Schwartz-Watts testified about the following:

- Dr. Schwartz-Watts "met with [Bryant's] aunt and his grandmother. ECF No. 16-9 at 63.

- Dr. Schwartz-Watts had access to the reports of Dr. Crawford, Dr. Bally, and Dr. Morgan. Dr. Bally, in particular, conducted "neurological testing" on Bryant. Id.

- In addition to those experts, Dr. Schwartz-Watts interviewed two neurologists and a forensic psychiatrist who consulted for the case. Id.

- Dr. Schwartz-Watts reviewed, among other records, Bryant's "school records." Id. at 64.

- Dr. Schwartz-Watts diagnosed Bryant with post-traumatic stress disorder "secondary to some sexual abuse that he experienced in his past." Id. at 65. She later affirmed her belief that "sexual abuse was the root of his mental illness." Id. at 89–90.

- Dr. Schwartz-Watts obtained affidavits from Bryant's grandfather and mother. Id. at 68. Although both denied at the time that Bryant had been sexually abused, the fact that subsequent counsel was able to obtain an affidavit to the contrary does not evince a failure to investigate on trial or PCR counsel's part.

- Dr. Schwartz-Watts diagnosed Bryant with "permanent impairment" in several areas, based on her scoring of Bryant on the Global Assessment of Functioning scale. Id. at 75.

Additionally, Dr. Schwartz-Watts previously testified at the trial-level sentencing proceedings about the following:

- Dr. Schwartz-Watts testified that she spoke with "the paternal aunt Terry Caulder" and specifically asked whether Bryant's mother abused alcohol during pregnancy. Caulder[4] responded that she "did not see Mrs. Bryant abusing any alcohol during her pregnancy." ECF No. 16-4 at 48.

- Dr. Schwartz-Watts noticed that there were pictures of Bryant as a young child that were "consistent with" fetal exposure to alcohol. However, she ultimately stated, "there's no evidence and I can't say with a reasonable degree of medical certainty that he was exposed to alcohol in utero but there's a question." Id.

---

[4] Caulder also testified in the same proceedings. See ECF No. 16-4 at 22.

Therefore, the case record shows that PCR counsel, through Dr. Schwartz-Watts, had ample relevant information about Bryant's familial and school history, evidence of sexual abuse, and evaluations of mental impairments. Bryant objects to the court's "focus[] . . . on the testimony of Dr. Schwartz-Watts," ECF No. 130 at 8, but the court finds it was not clear error to do so given that Dr. Schwartz-Watts was essentially the conduit for all the evaluations and record-gathering that took place. Indeed, Dr. Schwartz-Watts had access to the very records that Bryant now claims PCR counsel should have identified, including family-member testimony and school records. Thus, to the extent a failure exists, it fell on Dr. Schwartz-Watts for not conveying the full extent of the evidence to PCR counsel, and not on counsel. Such a failure is not a ground for relief as "there is no right to effective assistance of expert witnesses or mitigation investigators, nor are their deficiencies automatically imputed to counsel[.]" Terry v. Stirling, 2019 WL 4723345, at *13 (D.S.C. Sept. 26, 2019); see Wilson v. Greene, 155 F.3d 396, 401 (4th Cir. 1998) ("The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness.").

As Bryant further stresses, Dr. Schwartz-Watts appeared to discount the possibility that Bryant suffered from FASD during her trial testimony. But that alone leads the court to conclude that it is was reasonable for counsel not to further investigate or raise the issue. In assessing counsel's investigation, the court "must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" Wiggins v. Smith, 539 U.S. 510, 523 (2009) (quoting Strickland, 466 U.S. at 688–89). On this point, Bryant notes

that during the habeas and second PCR court proceedings, Dr. Schwartz-Watts essentially changed her opinion and stated that based on the new facts, she had "incorrectly testified that [Bryant] did not meet the criteria of Intellectual Disabilities." Amend. Pet. at 74 (quoting ECF No. 38-2, Schwartz-Watts Aff. ¶ 4). Dr. Schwartz-Watts stated that as she is not a psychologist, she was unfamiliar with the Flynn Effect—a concept that purportedly would have qualified Bryant's testing numbers. Schwartz-Watts Aff. ¶ 4. She also testified that the results of the "neuropsychological testing," which she had allegedly "been trying to do [] since 2006," would have altered her opinion as well. ECF No. 130 at 10 (quoting ECF No. 89-42 at 78–86).[5]

These supposed revelations do not move the needle. The record indicates that Bryant was in fact administered neuropsychological tests prior to the first PCR proceedings, notwithstanding Dr. Schwartz-Watts's later assertion that Bryant could not fully complete them due to then-unidentified intellectual disabilities. Dr. Schwartz-Watts Aff. ¶ 7 ("Mr. Bryant's inability to complete neuropsychological testing in the past could be because of previously unidentified Intellectual Disabilities."). Based on the results, it was reasonable for PCR and trial counsel to decide against additional tests. Furthermore, there is limited evidence, at least from what Bryant has presented, that either trial counsel or PCR counsel prevented Bryant from receiving a full battery of neuropsychological tests. Finally, although she is not a psychologist, Dr. Schwartz-Watts indicated she evaluated Bryant and could not conclude to a medical degree of certainty that Bryant suffered from FASD. PCR and trial counsel ostensibly relied on that conclusion, and the

---

[5] The court is unable to find Bryant's reference but assumes for purposes of this motion that the quoted passage is accurate.

court finds that any failure is most reasonably attributed to the experts in the case, which again, does not constitute a proper ground for relief.  In sum, viewed from counsel's perspective at the time, it was not unreasonable to decide that a theory about fetal alcohol syndrome disorder should not be presented as mitigating evidence.  The court finds no clear error or manifest injustice with respect to its ruling on Ground Eight, denies Bryant's motion to alter or amend, and sustains the denial of a certificate of appealability.

### C.  Ground Seven COA

Although respondents oppose Bryant's motion to alter or amend, respondents ask the court to alter its order with respect to the certificate of appealability that it issued for Ground Seven of Bryant's petition.  Under Ground Seven, Bryant alleges that he is intellectually disabled, and as such, his execution is barred under <u>Atkins</u>.  As noted above, this argument was not raised in either Bryant's direct appeal or his initial PCR applications.  When Bryant attempted to add the claim to his subsequent PCR application, and the state moved to dismiss it, the PCR court denied the motion and allowed the claim to proceed on the grounds that Bryant's failure to comply with the state's procedural rules was not an adequate and independent ground for denial of relief in light of the Supreme Court decision in <u>Atkins</u>.  ECF No. 89-37 at 114.  Bryant later acknowledged that he did not meet the diagnostic criteria for an intellectual disability but attempted to amend his application to state that he suffered from FASD, and thus, his execution was still barred under an extension of <u>Atkins</u>.  A second PCR court determined that the amendment to add the FASD-based claim was successive and time-barred.

Under the "adequate and independent" criteria for procedural default, a state rule is independent "if it does not depend on a federal constitutional ruling."  <u>Fisher v.</u>

Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (alterations and internal quotation marks omitted). Although the magistrate judge recommended finding that the state court decision did not "depend on" Atkins, this court departed from the R&R in this narrow respect and concluded that the PCR court necessarily had to confront Atkins to decide that the state procedural rules barred Bryant's FASD claim. In doing so, this court relied on the Fifth Circuit's ruling in Busby v. Davis, 925 F.3d 699 (5th Cir. 2019), as persuasive authority. In Busby, the Fifth Circuit held that a state court's review of an Atkins claim "necessarily depend[s] on a substantive analysis of the Eighth and Fourteenth Amendments as applied to the factual allegations." Id. at 707.

Even so, the court granted summary judgment in respondents' favor on Ground Seven. The court determined that in addition to finding that the FASD claim was time-barred and successive, the PCR court had also conducted a de facto analysis of the FASD claim on the merits. The court then concluded that the PCR court's ruling on the merits was not unreasonable or contrary to clearly established law because federal courts have not extended the bar on capital punishment to inmates with FASD. But based on the lack of binding caselaw on both issues, the court issued a certificate of appealability as to Ground Seven.[6]

---

[6] An appeal may not be taken from the final order in a habeas corpus proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability will not issue for claims addressed by a district court absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Respondents request the court amend the order and deny a certificate of appealability. Respondents' chief disagreement with the court's order rests on what respondents claim is a misapprehension of Bryant's PCR claims. Namely, respondents highlight that Bryant attempted to bring two separate claims. First, Bryant raised an Atkins claim based on an intellectual disability, which proceeded to be heard at an evidentiary hearing before being dismissed. ECF No. 89-37 at 146. Second, Bryant filed a motion to amend his application, ECF No. 89-39 at 95, seeking to add a claim asserting that barring "the death penalty on people suffering from FASD is a natural extension of . . . Atkins," id. at 99. Judge Seals denied the motion to amend and held that the application would be "restricted to the claim of Intellectual Disability as defined by the relevant statutory definition." ECF No. 89-37 at 143.

According to respondents, the distinction is important because it meant the PCR court never "decide[d] the question of whether evidence supported FASD." ECF No. 134 at 2. On that point, the court agrees. There is no dispute that the PCR court chose to exclusively rule on the Atkins claim for intellectual disability; it made that explicitly clear when it denied Bryant's motions to amend his application. With the amendments denied, the PCR court determined with relative ease that Bryant did not meet the specific criteria for showing an intellectual disability under Atkins. See ECF No. 89-38 at 9 n.8 ("The diagnosis of FASD is not critical to this litigation . . . . FASD is not the same as the diagnosis for Intellectual Disability."); id. at 14 ("Dr. Woods'[s] opinion is clouded by a push to accept a 'functional equivalent' of Intellectual Disability in another condition.").

As he emphasizes though, Bryant did not appeal the PCR court's ruling on the Atkins claim to the South Carolina Supreme Court; rather Bryant appealed the denial of

his motion to amend.  ECF No. 132 at 2.  The court acknowledges that its summary

judgment order referred to the PCR court's order of dismissal of the <u>Atkins</u> claim.

Instead, the court should have assessed the PCR court's order on Bryant's motion to

amend.  ECF No. 89-37 at 139.  The latter clearly stated that an amendment was barred

by procedural rules, including South Carolina Rule of Civil Procedure 15, S.C. Code

§ 17-27-10, and S.C. Code § 17-27-45.  <u>Id.</u>  Respondents argue that the PCR court's

decision—regardless of which rule the court looks to—could only have been premised on

an adequate and independent state ground.

   Nevertheless, the court does not find that its ruling resulted in clear error or

manifest injustice.[7]  In his motion to amend his PCR application, Bryant argued that

<u>Atkins</u> should be extended to cover FASD.  The PCR court disagreed and determined the

argument sought "an extension of the <u>Atkins</u> exemption to cover a new condition not

otherwise recognized as an exemption" and therefore did not "relate back to the original

claim of an <u>Atkins</u> exemption."  <u>Id.</u> at 141.  But the PCR court's decision to deny the

amendment based on state procedural rules for relation back arguably relied on a direct

interpretation of <u>Atkins</u> because it meant determining <u>Atkins</u> could not include mental

impairment based on FASD.[8]  Bryant also points to evidence that during the hearing on

---

   [7] As the court noted above, to qualify for reconsideration in this manner, an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to strike the court "with the force of a five-week-old, unrefrigerated dead fish."  <u>Franchot</u>, 572 F.3d at 194.

   [8] Indeed, the order on the motion to amend arguably relied more on <u>Atkins</u> than the subsequent order of dismissal of the <u>Atkins</u> claim.  In <u>Atkins</u>, the United States Supreme Court left the procedure of determining what constitutes an intellectual disability to the states.  <u>Larry v. Branker</u>, 552 F.3d 356, 369 (4th Cir. 2009) ("<u>Atkins</u> expressly left to the states the task of defining [intellectual disability].").  Accordingly, the PCR court's <u>Atkins</u> order largely relied on the "prongs" of the intellectual-disability

Bryant's motion to amend, the parties contested whether FASD warranted an extension of <u>Atkins</u>.  ECF No. 124 at 13.  The state asserted that there was "no argument" that an FASD diagnosis "somehow flows into an Atkins analysis."  ECF No. 89-40 at 148.  Counsel for Bryant replied that "the reasoning for extending [Atkins] to Fetal Alcohol Syndrome Disorder is the same reasoning that applied in Atkins."  <u>Id.</u> at 156.  Certainly, the PCR court ultimately agreed with the state and determined that the FASD claim could not relate back to the <u>Atkins</u> claim.  But the court finds it is at least debatable whether "[i]n ruling on the amendment, the PCR court then had to review and interpret <u>Atkins</u>, and its definition of intellectual disability, to conclude that Mr. Bryant's claim fell outside of the <u>Atkins</u> purview."  ECF No. 124 at 13.

To be clear, the court maintains its prior ruling that even if the PCR court reached a decision on the merits within the meaning of the AEDPA, its decision on the merits was not unreasonable or contrary to clearly established federal law.  To the extent the PCR court found that FASD does not fall within the scope of <u>Atkins</u>, no Supreme Court decision has contradicted that finding, and district court rulings support the same.  <u>E.g.</u>, <u>Garza v. Shinn</u>, 2021 WL 5850883, at *105 (D. Ariz. Dec. 9, 2021) ("There is no authority holding that individuals with FASD are exempt from capital punishment.").  But the court chooses not to deny a certificate of appealability based on the discussion of whether the amendment was procedurally defaulted.  In sum, the court previously found that reasonable jurists may debate whether the PCR court properly determined that

---

test set forth in South Carolina Supreme Court cases.  ECF No. 89-40 at 4 ("This Court is guided by <u>Franklin</u>, <u>Stanko</u>, and <u>Blackwell</u>.")

Bryant's claim was procedurally defaulted. The court finds that its ruling on that uncertainty was not clearly erroneous and did not result in manifest injustice.

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Bryant's motion to alter and amend and **DENIES** respondents' motion to alter and amend. The court grants a certificate of appealability for Ground Seven raised in Bryant's amended petition.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 11, 2023**
**Charleston, South Carolina**

29